413 P.2d 764

**STATE of Arizona, Appellee,**

**v.**

**Arden THURSTON, Appellant.**

**No. 1536.**

Supreme Court of Arizona.

En Banc.

April 28, 1966.

Robt. W. Pickrell, former Atty. Gen., Stirley Newell and Wm. E. Eubank, Asst. Attys. Gen., Darrell Smith, present Atty. Gen., and Frank A. Parks, Asst. Atty. Gen., for appellee.

Ingraham, Dennis & Jones, by Ronald F. Jones, Yuma, for appellant.

UDALL, Justice.

The defendant was charged with the illegal sale of marijuana, on or about February 9, 1964, in violation of A.R.S. § 36–1002.07, as added 1961. The information charged defendant with the prior offense of the possession of marijuana on the 12th day of August, 1957, in the state of California, which prior conviction the defendant admitted prior to trial. The defendant was tried before a jury on June 17th and 18th, 1964, and was found guilty as charged. The sentence imposed was confinement in the state prison for a minimum of seven years and a maximum of ten years.

Defendant appeals on a number of grounds which can be summed up as follows: that the prosecution failed to sustain the burden of establishing that the intent to sell the marijuana originated in the mind of defendant; that the defendant was entrapped by agents of the state into committing the crime charged; that the trial court erred in refusing to charge the jury on the defense of entrapment; that the trial court erred in refusing to instruct the jury that the burden was upon the state to establish that the intent to sell marijuana originated in defendant's mind; that the trial court erred in overruling defendant's motion for a new trial based on newly-discovered evidence submitted to the court by affidavit the day after the trial ended; that the trial court erred in allowing the prosecution to introduce testimony by the state's main witness, a narcotics undercover agent, that defendant, on January 31, 1964, located the source for obtaining marijuana, and that on two separate occasions assisted the agent in locating a source for obtaining marijuana.

The state's first and prime witness, Albert Dominquez, was an undercover agent for the state's narcotic bureau. He testified that he met the defendant on January 31, 1964 and that he saw the defendant at least once a day, or every other day thereafter until the date on which the crime charged occurred.

When Dominquez first met defendant on January 31st, Dominquez asked the defendant if defendant could sell him some marijuana. Defendant told Dominquez that he would take Dominquez to his source of supply. Dominquez testified that he went to

the defendant's source of supply with defendant and Dominquez was introduced to the source of supply. Dominquez also testified that he made buys from defendant's source three times, on January 31st, on either February 1st or 2d, and then on February 9th. Dominquez testified that on February 9th he met the defendant at eight o'clock in the evening and entered into a conversation with defendant about narcotics. Dominquez asked the defendant if defendant could sell him some marijuana.

Defendant then called up his source of supply, who was not at home at that time. Defendant informed Dominquez that there would be a wait of about an hour or two. Dominquez replied that he had to leave. Dominquez gave defendant money and left.

At approximately ten that evening Dominquez returned and the defendant handed material to Dominquez, which material was later identified by an expert to be marijuana.

Agent Barrios testified to the possession he maintained over the envelope containing the marijuana in question and that he personally handed this to Mrs. Helen Bannett of the Thomas Laboratories of Yuma and Imperial Valley. Barrios further said that prior to Dominquez' going back to pick up the marijuana, he (Barrios) conducted a standard search of Dominquez' person and that he followed Dominquez and observed defendant enter Dominquez' car. After a short ride in the Dominquez car, defendant was further observed getting out of the car. Immediately thereafter Dominquez gave Barrios the material he had received from defendant. Agent Sanasac, who had accompanied agent Barrios on this occasion similarly testified to the preceding events.

The defendant testified on his own behalf to the effect that he was acquainted with the undercover agent, Dominquez, whom he met in January or February and that he saw him several times. Defendant denied having sold any marijuana to Dominquez and admitted nothing more than going for a ride with Dominquez. He denied that Dominquez paid him any money on February 9th. The defendant denied that during the time he had been in Yuma [since January 1, 1963] he ever had in his possession anything which he believed to be narcotic or marijuana. He also denied ever selling during that period of time anything he believed to be narcotic or marijuana.

Defendant claims that he was entrapped into the commission of the crime charged by the narcotics officers. In Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), the United States Supreme Court set out the elements which must exist in order to establish a defense of entrapment. They are as follows:

The government agents must manufacture the crime; the criminal design must originate with the government agent; the

defendant must be an innocent person. The government agent must implant in the mind of the innocent defendant the disposition to commit the offense; the government agent must induce the commission of the crime in order that the defendant may be prosecuted; the government agent must tempt innocent persons into violations; the government agent must use enticements and guile. The Supreme Court of the United States in Sherman v. United States, supra, also stated that "the fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials. * * *" [italics in original].

■ To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and a trap for the unwary criminal. See also Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

This Court has applied the same rules as set forth in Sherman v. United States, supra in Hoy v. State, 53 Ariz. 440, 90 P.2d 623 (1939). In State v. Hernandez, 96 Ariz. 28, 391 P.2d 586 (1964), we stated that: "the defense of entrapment does not arise where one is ready to commit the offense given but the opportunity * * *." Where state officers did not induce the defendant to commit the crime but merely offered to buy marijuana, which the defendant was ready to sell, the state officers did not entrap the defendant.

■ We find nothing in the facts of the instant case to establish the defendant's defense of entrapment. Since the instructions given by the court to the jury must relate to the evidence presented to the court and jury, and since there was no evidence of entrapment, the court properly refused all of the instructions based on the defense of entrapment. State v. Folk, 78 Ariz. 205, 277 P.2d 1016 (1954).

■ The defendant complains that the court below erred in not giving the following instruction to the jury:

"You are instructed that the burden is upon the State to establish that the intent to sell marijuana originated in the defendant's mind."

However, the court below fully instructed the jury that in order to convict the defendant of the crime charged the jury had to find there was a union of the alleged criminal act with criminal intent. The defendant's claim of error here is without merit.

Defendant moved for a new trial four days after the conclusion of the trial below. This motion for a new trial was partially based on alleged newly-discovered evidence which would have impeached the state's main witness, Dominquez, the narcotics

agent. One Billy Duncan subscribed to an affidavit one day after the trial, swearing that he saw Dominquez administer heroin to himself and a girl on the day of the alleged crime charged in the information. Dominquez had testified that he had not used narcotics for about two years.

We have held that a new trial for newly-discovered evidence is required if the introduction of the evidence at the trial would probably have changed the verdict, and if the defendant could not, with reasonable diligence, have discovered and produced it upon the first trial. State v. Sneed, 98 Ariz. 264, 403 P.2d 816 (1965). See also, State v. Schroeder, 100 Ariz. 21, 409 P.2d 725 (1966). The alleged newly-discovered evidence on a collateral issue was to be used solely for the purpose of impeaching the state's witness. It does not go to the proof or disproof of the crime charged. The general rule in this state is that a new trial will not be granted based on any discovered evidence which is merely impeaching. Such evidence does not have a substantial probability of changing the verdict. The court below did not err in denying the new trial.

Defendant also alleges as error the admission of testimony of Dominquez that the defendant was present when narcotics were purchased from another. At the time the questions were asked, the defendant did not object to this evidence. Since no timely objection was raised, it is not a matter within the proper scope of appellate review. State v. Milton, 85 Ariz. 69, 331 P.2d 846 (1958). See also, State v. Graham, 97 Ariz. 408, 401 P.2d 141 (1965).

Judgment affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and LOCKWOOD and McFARLAND, JJ., concur.