[No. 65-40747-2.   Division Two.   March 10, 1970.]

THE STATE OF WASHINGTON, *Respondent,* v. LEO GENE CLARK, *Appellant.*

*Wm. M. Tugman,* for appellant (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* and *Carl L. Johnson, Deputy,* for respondent.

PETRIE, J.—On a summer day in 1968, two young girls, ages 8 and 10, were playing in a park in Walla Walla when a stranger approached them. He asked the girls for direc-

tions to the park lavatory and then departed. Shortly thereafter he came out of the lavatory, walked over to where the girls were playing and exposed himself to the older child. The girls immediately ran home and told their mother who notified the police. The children described the man as "tall and thin with funny teeth and a tattoo on his arm."

Some 2 or 3 days after the incident, a policewoman, Mrs. Loid, interviewed the girls and showed them approximately 15 photographs to see if they could identify any as the man they saw in the park. Each girl selected two photographs. Because of the confusing state of the record, it is impossible to tell whether the girls selected four photographs of four different individuals or four photographs of two individuals. What is certain, however, is that the older girl selected defendant's photograph and the younger girl selected a photograph of another individual. Neither girl was able to make a positive identification although the older girl told policewoman, Loid, that she thought one of the photographs she selected "looked like him the most." This was later identified as defendant's photograph. The police then talked to the girls' parents, gave them the address of defendant's place of employment, and suggested they take the girls there to get a better look at defendant. The parents did just that. They, and the young girls, drove some 30 miles to the city of Waitsburg where Leo Gene Clark was working in a gas station. Clark came over to the car and the girls recognized him by appearance and by his voice.

Leo Gene Clark was subsequently charged and tried for indecent exposure. During trial the young girls identified Clark and he was convicted. He appeals from the jury conviction and contends primarily that the identification procedure utilized by the police was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. We agree.

There is nothing intrinsically unconstitutional about the technique of photographic identification; rather each case is to be evaluated on its own facts. *Simmons v. United*

*States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). The primary danger to be avoided is misidentification. The probability of misidentification increases in direct relationship to the susceptibility of the witness to suggestion, and is greatly increased when the police impermissibly suggest to the witness the individual they suspect, such as by displaying to the witness the photograph of a single individual or by showing the witness several pictures, among which the photograph of a certain individual recurs, or is in some way emphasized or by indicating to the witness that they have other evidence that one of the persons pictured committed the crime. *Simmons v. United States, supra.* The danger of all such procedures is that the police rather than the witness really identify the suspect to the crime.

The instant circumstances reveal that no such impermissiveness occurred in the selection or the manner in which the photographs were presented. The photographs generally conformed to the description given. They were apparently shown in a random fashion with no one particular photograph of an individual emphasized. Such a conclusion is strengthened by the fact that the girls selected photographs of at least two different individuals.

We do believe, however, that the procedure the police utilized to *supplement* the photographic identification procedure was impermissibly suggestive. The vice of such a procedure becomes acutely in focus when viewed in light of the particular facts of the instant case.

After looking at the photographs and selecting two apiece, the girls still were not sure. They were not able to make a positive identification. At least, the police did not choose to make an arrest and follow it with a lineup and the protections afforded a defendant thereunder. As previously mentioned, the girls selected photographs of at least two different individuals—one being defendant's photograph and the other a picture of another individual. The police, fully aware of the young girls' uncertainty, contacted the parents, told them of defendant's whereabouts and suggested that they take the girls to a service station

in the neighboring town of Waitsburg to get a better look at one of the men whose picture had been chosen previously. The police did not divulge any such information or make any similar suggestions in regards to the other individual or individuals whose picture had been chosen by the girls; nor is there any indication in the record that such procedure would have been futile. The suggestion that the parents take their children to observe one individual and not the other, in effect, amounted to the police saying "this is the man". Such procedures have been declared a denial of due process. *Foster v. California*, 394, U.S. 440, 22 L. Ed. 2d 402, 89 S. Ct. 1127 (1969).

The fact that the police made the suggestion directly to the parents and not the young girls is of no consequence. What is important is the effect the suggestion had upon the young girls. We find no better evidence of that effect than that elicited from the girls themselves.

In the absence of the jury, the older girl declared:

Q What did you do up in Waitsburg?
A We went to identify—I don't know how we got into doing it, but we went to identify—try to—the police told us where they thought the man who we picked out of the pictures was in Waitsburg that worked at a service station, and so we were asked to go down and identify the man at the Waitsburg service station.

In the presence of the jury, she testified:

Q After talking with Mrs. Loid that day, did you and your family do anything that weekend?
A Yes. We went down to Waitsburg.
Q Where did you go to Waitsburg and for what reason?
A To go down to the service station to identify a man.

The younger girl, after explaining the process by which she and her sister chose pictures presented to them by Mrs. Loid, testified on direct examination:

Q And then after talking with Mrs. Loid, and you were almost sure, what did you do later on? Do you remember anything that weekend?
A Yes. We went to a gas station in—

Q In another town?
A Yes. I forget what it's called.
Q And do you know what you went up there for?
A Yes.
Q What did you go up there for?
A To see if we could find that man.
Q And did you find that man?
A Yes.

Under cross-examination, she testified:

Q And you went to see the man the police told you they thought was the man, isn't that right?
A Yes.
Q So you went to Waitsburg to do that?
A Yes.
Q You didn't go and try to see any other men, did you?
A No.

We hold that the totality of the circumstances surrounding the identification procedure was so impermissibly suggestive as to undermine the reliability of the eyewitness identification and, as such, the defendant's conviction based solely thereon, constituted a denial of due process.

We feel somewhat obliged, after striking down a specific law enforcement technique, to provide police officers some acceptable alternate solutions to a most difficult problem. At the same time, we are reluctant to specify procedures which we would approve, lest they be mistakenly understood as appropriate under even slightly differing factual circumstances. Under the facts as they appear in the record before us (and we recognize they may not have been presented to the police in precisely the same fashion), we do express the opinion that instead of taking the young girls to Waitsburg, the defendant could have been arrested and placed in a lineup. A supplemental identification in a police lineup, with all the attendant protections those procedures now provide, and absent the trip to Waitsburg, would have provided the defendant with a fair trial. At the very least, and under circumstances which might not warrant arrest and exposure to a lineup procedure, we believe the "on site" identification should have been surrounded with sufficient

safeguards such that the tender and susceptible minds of the young witnesses would not have been exposed to the foreknowledge that they were being taken to a site selected by the police in order to identify "the man who we picked out of the pictures."

The judgment is reversed and this cause remanded for further proceedings consistent herewith.

ARMSTRONG, C. J., and PEARSON, J., concur.