489 P.2d 37

The STATE of Arizona, Appellee,

v.

Earl John LANG, Jr., Appellant.

No. 2213.

Supreme Court of Arizona,
In Division.

Sept. 29, 1971.

Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Burch, Cracchiolo, Levie & Guyer, by Michael E. Bradford, Phoenix, for appellant.

CAMERON, Justice.

This is an appeal from the conviction of Earl John Lang, Jr., on two counts of armed robbery (§§ 13–641 and 13–643 A.R.S.) and two counts of assault with a deadly weapon (§ 13–249 A.R.S.).

We are called upon to decide whether:

1. the pre-arrest photo identification of the defendant was unduly suggestive,

2. if so, did it taint the in-court identification, and

3. was it harmless error.

The facts necessary to decide the question presented are as follows. The two victims, Mr. Vernon Burt and Mr. Arthur Sparks, were Alabama truck drivers laid over in Phoenix, Arizona. On the evening in question, they spent several hours in a Phoenix bar known as "Magoos." They left the bar to call a cab from a telephone booth across the street when they were picked up by two girls in a light colored Pontiac automobile. After several stops, the couples headed south on the Black Canyon Freeway, exiting near or at the Tempe-Mesa turnoff and proceeding to the area of 48th Street and Baseline Road in Maricopa County. The road at that point has a rural, unlighted character. At that time, one of the girls, Barbara Hodges, complained of mechanical malfunction and they all got out to check. Barbara Hodges returned to the car and the other girl drew a .22 revolver from her trench coat pocket, pointed it first at Sparks and then at the face of Burt. She did not speak, but, rather, made a hand gesture indicating she wanted their money. Sparks complied immediately. However, Burt, with his hands in the air and the gun in his face, was reluctant to move. The girl fired a shot into a nearby bank of dirt and Burt quickly responded. She returned to the car and they sped away leaving the victims standing in the road.

Sparks was able to memorize the car's license number, LRN–400, an Arizona plate. On their walk back to a phone they began to have a suspicion that "she" was, in fact, a "he".

The victims called the sheriff's department and were contacted by Deputy Robert Falls about two hours after the incident. Besides the usual apparel descriptives, the deputy was informed the suspect was approximately 5′ 7″ tall, weighed about 130 pounds, and may well have been a female impersonator. Based upon these facts, the deputy showed the victims a four-photo composite of a known female impersonator (not the defendant) who allegedly frequented "Magoos." With this composite the victims were shown a "mug shot" of the individual as a male. The departmental reports indicate that the victims "stated without a doubt this was the suspect that held the pistol." As to this admittedly mistaken identity, Burt testified he did not make any identification. Sparks says he only noted that it "looked like" the one.

A trace of LRN–400 revealed a Prescott registration to a light colored Pontiac. For that reason, it was arranged to take the victims to Prescott the next day. One of the deputies making this trip testified that the victims were told they were taken "up there to have them identify the suspects." The departmental report indicates the following sequence of events. Upon their arrival in Prescott, they proceeded to the Prescott Police Station where Sgt. Easton

of the Prescott Police Department was picked up. They then proceeded to 124 Rush Street, Prescott, where the victims spotted and identified the car. They returned to the station and were shown three photographs for identification purposes. The deputies testified that both victims made a positive identification of the defendant Lang. Mr. Burt denied he made such an identification; Mr. Sparks testified he identified Lang. Thereafter, the deputies and the victims returned to 124 Rush Street, spotted Lang, and followed him about town for several hours. The original plan for an "in-crowd" identification of Lang was abandoned. As the deputy testified:

"Q So, for their convenience, a lineup was never held, was it?

"A I would not say for a matter of convenience, I would say we had a positive identification, from a group of three pictures * * *."

At the preliminary hearing with Lang appearing singularly, led in manacled and wearing jail garb, both victims identified him positively.

At the hearing on the motion to suppress the identification, Sparks testified as follows:

"Q Mr. Sparks, you testified that you identified this man as the person who robbed you on November 9th, you testified to that this morning. Are you saying that you recognize him as a result of looking at this picture and as a result of the investigation of the officers of this case or do you recognize him because in your own mind you know that that is the person who robbed you?

"A I recognize him without that picture there. I would—I knew that that was the man.

"Q You mean if you had never seen this picture you could still recognize this man was the person who robbed you?

"A Well, I could now, but in a line-up I still believe I could have picked him out. But of course the pictures helped.

"Q The picture of Mr. Lang did help you?

"A Yes.

\*     \*     \*     \*     \*     \*

"Q What is it about Mr. Lang that enables you to recognize him as the person who held you up?

"A Because I seen him that night and I see him now, I know that that's him, it's just like seeing someone one day and the next day you see him, or week from then, you know that's the man you seen."

The trial court suppressed any testimony of identification or any in-court identification by Burt. Sparks was allowed to make an in-court identification of the defendant. The court also allowed testimony concerning Sparks' photo identification of the defendant as well as Sparks' mis-identification of the photograph of the female impersonator from Phoenix.

The accomplice, Barbara Hodges, testified for the State, and items of clothing taken from the Prescott home of the defendant were identified by the victims. The automobile was also identified by the victims. The defendant testified in his own behalf that he was an alcoholic who "blacked out" on the evening in question and didn't remember what happened, but was sure from talking to his friends that he did not go to Phoenix on the evening in question.

## THE PHOTO IDENTIFICATION

■ This is a case of pre-information identification. Wade and Gilbert are not controlling. State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969). Our determination of the merits of this case is controlled, as in Dessureault, supra, by Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18

L.Ed.2d 1199 (1967). The test, as noted in Stovall, supra, is as follows:

" * * * [A] claimed violation of due process of law in the conduct of a confrontation depends on the *totality of the circumstances surrounding it * * *.*"* 87 S.Ct. at 1972. (Emphasis added)

Thus, we examine the photo identification of Lang by Sparks to determine if it was tainted by the unduly suggestive identification procedures. State v. Dessureault, supra. We note, parenthetically, that it is incumbent upon the law enforcement officials to preserve the integrity of the identification procedures if they wish to later utilize such an identification in court. Such was the nature of our recognition, in Dessureault, that:

"In this the burden is on the prosecution to establish from all the circumstances surrounding the pretrial identification that it was not such as to be unduly suggestive." 104 Ariz. at 384, 453 P.2d at 955.

An examination of this case reveals several unique problems. For example, the suspect would be, of course, more difficult to identify than usual due to a most successful disguise, at least as far as the victims were concerned. See State v. Fields, 104 Ariz. 486, 455 P.2d 964 (1969). This element seems to have occasioned confusion and difficulty from the beginning of the identification processes. The difficulty of identification and possibilities of mis-identification in this case would appear to call for the utmost of care in the identification processes. Indeed, initially the victims tentatively identified someone other than the defendant. Subsequently they were taken to Prescott. Mr. Burt testified as follows:

"Q Your purpose in going to Prescott was to follow, was it not, to see the automobile and to attempt to identify the suspect Lang?

"A Yes, sir.

"Q You knew the name when you went there, did you not?

"A Yes.

"Q Lang, correct?

"A Yes, sir.

* * * * * *

"Q * * * Where did you get that name? Did you learn it from a police officer?

"A Yes, sir."

Mr. Sparks similarly testified:

"Q Did you hear the name used in your presence in Prescott?

"A Yes, sir.

"Q By whom?

"A By the officers up there."

This testimony is important for the reason that, upon return to the Prescott Police Station, the victims were shown three photographs. One of these had a name other than Lang's prominently displayed on the photograph and also had a mustache. Thus, the victim in effect was selecting from only two photographs. Lang was identified.

■ There is great danger in such a procedure. The danger, of course, is one of suggestivity and irreparable mis-identification. Many cases, cited by both appellant and appellee, have dealt with this danger: United States v. Washington, D. C., 292 F.Supp. 284 (1968); United States v. Hamilton, 137 U.S.App.D.C. 89, 420 F.2d 1292 (1969); State v. Clark, 2 Wash. App. 45, 467 P.2d 369 (1970). We believe that the procedure used here was so "impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed 2d 1247 (1968). We find the totality of the circumstances indicate the identification to be unduly suggestive and it was error not to suppress testimony of the photo .identification.

■ We do not imply that photographic identifications where reasonably imperative for some proper police purpose, comporting with fairness in their number, type, general physical similarity and non-emphasis of any particular suspect, are precluded. Such photographic identifications must,

however, require the witness to exercise independent discriminatory powers of perception. Proper safeguards should be taken to insure that it is not "significantly suggestive", State v. Dessureault, supra, and the police may not, inadvertently or otherwise, narrow that possibility for human error by suggestive techniques.

## THE IN-COURT IDENTIFICATION

■ Such a finding does not necessarily, however, summarily require suppression of the in-court identification. As we have previously noted:

> "If * * * the circumstances of the pretrial identification were unduly suggestive * * * then it is the prosecution's burden to satisfy the trial judge from clear and convincing evidence that the proposed in-court identification is not tainted by the prior identification.

> "* * * [I]f requested the court must instruct the jury that before returning a verdict of guilty it must be satisfied beyond a reasonable doubt that the in-court identification was independent of the previous pretrial identification * *." State v. Dessureault, supra 104 Ariz. at 384, 453 P.2d at 955.

Essentially, this requires an independent source for the in-court identification. The problem in confirming such an independent source is intricately bound in the reinforcement processes subsequent to the original identification. This problem was succinctly noted in United States v. Washington, supra:

> "The * * * time lag from the events of the robbery * * * together with the fact that the tainted identifications have been reinforced by subsequent and highly suggestive identifications, *casts severe doubt on the ability of any of the witnesses to independently recollect * * *.*" 292 F.Supp. at 289. (Emphasis added)

The danger here, of course, is the ability to confirm the identification by a course of conduct thereby reinforcing the witness's assurance that he has identified the proper person. After such reinforcement few witnesses, in the face of confirmatory evidence, would hesitate to assert that they were sure all along. This is not to infer conscious perjury, but rather to recognize a psychological fact of life. There is most definitely no "air of impropriety" inferred therefrom. We believe, however, that there was sufficient evidence of independent identification to support the trial court's denial of the motion to suppress the in-court identification. Also, it is noted the jury was instructed that:

> "The issue of identification of the defendant as the perpetrator of the crimes charged must be shown by the prosecutor beyond a reasonable doubt * * *."

We believe that there was sufficient evidence for the jury to find that Sparks' in-court identification proceeded from an independent source.

## HARMLESS ERROR

To decide that testimony of the photo identification by Sparks should have been precluded is not, however, to ipso facto require reversal. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), has indicated the applicability of harmless error to such cases. The identity of Lang as the perpetrator of this crime was emphatically, unequivocally and undeniably established by the accomplice, Barbara Hodges. Her testimony as to the details of the evening—the make-up, the clothing, the robbery, etc.—were detailed and unimpeached even after inquiries into bias, prejudice, and motive for fabrication. Admittedly, Barbara Hodges was an accomplice (§ 13–136 A.R.S.), but there was more than sufficient corroboration for her testimony being admissible. State v. Goldthorpe, 96 Ariz. 350, 395 P.2d 708 (1964); State v. Gomez, 102 Ariz. 432, 432 P.2d 444 (1967). She being an accomplice does not make her testimony any less persuasive under the facts in this case.

The search of the Pontiac and the dwelling at 124 Rush Street, Prescott, disclosed a .22 caliber revolver with one spent shell, a wig, the shoes, and other items of clothing

which the defendant was alleged to be wearing on the evening in question and which clothing was identified by the victims. We have examined the totality of the proof in this case and:

"This extrinsic evidence of guilt is so strong as to have warranted affirmance even if there had been an error in admitting the identification testimony." United States v. Hamilton, supra, 420 F.2d at 1295, n. 11.

We find this case to be properly within the "harmless error" rule. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Judgment affirmed.

STRUCKMEYER, C. J., and HAYS, V. C. J., concur.