514 P.2d 446

The STATE of Arizona, Appellee,

v.

George BRANNIN, Appellant.

No. 2512.

Supreme Court of Arizona,
In Banc.

Sept. 24, 1973.

**526**

Gary K. Nelson, Atty. Gen., by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Debus & Busby, by Larry L. Debus, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a jury verdict and a judgment of guilt to the crime of assault with a deadly weapon, § 13–249 A.R.S., and a sentence of not less than six years nor more than nine years in the Arizona State Prison.

We are asked to answer the following questions on appeal:

1. Was the defendant denied his right to a speedy trial as guaranteed by the Arizona and United States Constitutions?

2. Should the indictment have been quashed because the members of the Grand Jury had not been properly instructed as to the meaning of "probable cause"?

3. Should the trial court have granted a new trial because of the withholding of evidence by the County Attorney?

The facts will be set out in some detail and as near as possible in chronological order. On 5 June 1970, George Brannin "picked up" a plainclothes undercover agent of the Phoenix Police Department outside a bar in Phoenix, Arizona. After driving several blocks and engaging in conversation with homosexual overtones, Brannin grabbed the officer's private parts and tried to unbutton the officer's trousers. The officer reached into his back pocket, showed the defendant his badge, and attempted to arrest Brannin for an indecent act. Brannin testified he thought his passenger was reaching for a gun to "roll" him, though the testimony of the police officer indicated that Brannin saw the badge and knew he was being arrested. In any event, Brannin reached for a gun he kept in the car and pointed it at his passenger. A struggle ensued in which the officer was shot once and Brannin was shot three or four times after the officer gained control of the gun. Brannin was then arrested and charged by complaint with assault with intent to commit murder.

On 22 June 1970, a preliminary hearing was set for 29 June 1970. On 23 June 1970, Brannin was released on bond. On 29 June 1970, the preliminary hearing was continued until 14 August 1970, at the request of Brannin. On 7 August 1970,

Brannin requested a continuance due to the death of his son. It was continued to 19 August 1970. On that date, the preliminary hearing was set over pending the outcome of a polygraph examination. Due to the court's calendar the preliminary hearing was next scheduled for 4 November 1970. On 22 October 1970, it was continued on motion of the court to 29 January 1971, because the court's calendar was backed up and because the Justice of the Peace was leaving office 1 January 1971 and the court felt it should be heard by the newly elected Justice of the Peace. On 18 January 1971, the court granted ex parte continuance upon request of the County Attorney for the reason that the preliminary hearing was scheduled for a time during a County Attorney's convention. The preliminary hearing was then continued to 1 April 1971. On that date, Brannin moved to dismiss for failure of the State to promptly prosecute. But the court on its own motion continued the matter until 19 April 1971, due to illness of the judge. There was one further continuance before the preliminary hearing was held on 2 June 1971, and the complaint subsequently dismissed.

On 28 June 1971, the State filed a complaint charging Brannin with assault with a deadly weapon. The preliminary hearing was set for 1 July 1971, and then continued by stipulation to 29 July 1971. On that date, the preliminary hearing was again continued due to the failure of the court reporter to prepare a previously requested transcript and because the Justice of the Peace disqualified himself and referred the case to another magistrate. On 1 September 1971, the preliminary hearing was held and Brannin held to answer. On 15 October 1971, Brannin's motion to quash was granted and the matter referred back to the Justice of the Peace for completion of the preliminary hearing. It was reset for 17 December, but was never held since the State filed an indictment against Brannin on 9 November 1971, and dismissed the complaint the next day. Brannin moved to quash the indictment and to dismiss on speedy trial grounds. The trial was held on 4 January 1972.

Among the witnesses endorsed on the indictment was a John Newhouse who was passing the area in his truck after the shooting had taken place. He had presumably left the State at the time of the trial and was not called by the State. The defense did not become aware of John Newhouse's possible testimony until the last day of the trial when a report containing a summary of what Newhouse had observed was made available to defense counsel. The defense moved for a new trial alleging misconduct on the part of the County Attorney in concealing this information though he did not ask for a continuance. The jury returned a verdict of guilty, the court sentenced Brannin to a term of from six to nine years, and he timely appealed.

## SPEEDY TRIAL

The right to speedy trial has been guaranteed in Arizona by the Arizona Constitution Art. 2, §§ 11 and 24; § 13–161, subsec. 1 A.R.S.; and Arizona Rules of Criminal Procedure, Rule 240, 17 A.R.S. Federal speedy trial standards under the Sixth Amendment of the United States Constitution were made applicable to the states by Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). See Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) and Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970).

This court has held that " * * * in Arizona the right to a speedy trial as that term is defined in Rule 236 commences at the time an accused has been 'held to answer' by a magistrate," State v. Maldonado, 92 Ariz. 70, 373 P.2d 583 (1962), or after indictment is returned, Boccelli v. State, 109 Ariz. 287, 508 P.2d 1149 (1973).

In United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the United States Supreme Court defined

when the Sixth Amendment speedy trial right attaches:

"* * * The Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused' * * *.

* * * * * *

"* * * it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.

"Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. [footnote omitted] But we decline to extend the reach of the amendment to the period prior to arrest." 404 U.S. at 313, 320–321, 92 S.Ct. at 459, 463–464.

■ Arizona appears to have stricter speedy trial requirements than the requirements set by the United States Supreme Court, but the time limits set by Arizona law may be waived by the defendant, Bowman v. State, 103 Ariz. 482, 445 P.2d 841 (1968); State v. Greer, 7 Ariz.App. 155, 436 P.2d 933 (1968); Application of Hitchcock (D.C.1961), 199 F.Supp. 228, cert. den. 369 U.S. 857, 82 S.Ct. 944, 8 L. Ed.2d 15 (1962), cert. den. 376 U.S. 924, 84 S.Ct. 684, 11 L.Ed.2d 619 (1964), as was done in the instant case under the Rules of Criminal Procedure in effect at the time this case was commenced. Under these rules, the time began to run when the indictment was returned or when the defendant was held to answer. Boccelli v. State, supra, and State v. Maldonado, supra.

■ It is apparent from United States v. Marion, supra, however, that for federal constitutional purposes, the time commences at the point of arrest, information, or indictment whichever comes first.

In the instant case, Brannin's speedy trial rights under the Sixth Amendment to the United States Constitution as interpreted by the United States Supreme Court, commenced at the time of arrest, or 5 June 1970, some 19 months before the trial in the matter. This is true even though two informations and one indictment were had as a result of the same act, and the indictment upon which the trial was held was returned less than 60 days prior to trial.

The United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), set out the criteria by which the speedy trial right is to be judged:

"* * * The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed. [footnote omitted]." 407 U.S. at 530, 92 S.Ct. at 2191.

Although not excluding other factors, the court identified four as pertinent: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. All these factors and others which may be pertinent must be weighed by the court together and no one factor is conclusive.

The length of delay is perhaps the least conclusive of the factors, and where, as here, is substantial, acts merely as a triggering mechanism necessitating analysis of the other factors. Barker v. Wingo, supra. See United States ex rel. Stukes v. Shovlin, 464 F.2d 1211 (3rd Cir. 1972).

Although it would appear that the majority of this delay is attributable to the County Attorney and the Justice of the Peace, it is not apparent from the record before us that Brannin objected to any of the continuances or demanded an immediate hearing or trial. He did file a motion to dismiss for failure of the State to promptly prosecute on 1 April 1971, prior to the first preliminary hearing on the assault with intent to commit murder complaint, and he raised the same issue once more just prior to the trial.

We will therefore look primarily to the prejudice to the defendant (and to the trier of fact) occasioned by the delay. Brannin cannot claim that the delay caused a loss of his memory since he knew immediately

after the offense that charges were being brought against him. State v. Mendoza, 109 Ariz. 445, 511 P.2d 627 (1973) It is apparent from a reading of the record that the delay may be responsible for the failure of some of the witnesses to testify as clearly and completely about the events prior to, during, and after the incident as would be desired. We do not find that this was critical to the case of the defendant or that it impaired the ability of the trier of fact to determine the issues. The two participants were shot, the police officer and Brannin. These facts were readily apparent from the hospital records and the circumstances of the apprehension after the shooting were well documented. The trial boiled down to the credibility of these two participants, the officer and Brannin, and there is no indication that this testimony, diametrically opposed as it was on some points, would have been any different 19 days after the arrest or 19 months after.

■ The County Attorney has the primary responsibility in seeing that the speedy trial requirements of the State of Arizona and the United States Constitution are met, and it is no defense that the defendant asked for some of the delays and acquiesced in others. In failing to vigorously pursue this prosecution, he risked losing the case. If the defendant is innocent, he is entitled to go free as soon as possible; if he is not, the public is entitled to have him convicted. While we deplore the actions of the County Attorney's office in failing to bring such a serious case quickly to trial, under all the circumstances in the case, we find no prejudice and therefore no violation of defendant's right to a speedy trial.

## INSTRUCTING THE GRAND JURY

The defense made a timely motion to quash the grand jury indictment because of the alleged failure of the empaneling judge to charge the grand jury with respect to their official duties and particularly with respect to probable cause. Defendant cites Rule 92 of the Rules of Criminal Procedure, 17 A.R.S., which reads as follows:

"After the grand jurors are sworn, the court shall charge them concerning the offenses that may be considered by them and concerning their duties in respect thereto." Rule 92, Rules of Criminal Procedure, 17 A.R.S.

And also the statute which reads:

"The grand jury shall return an indictment charging the person under investigation with the commission of a public offense if, from all the evidence taken together, it is convinced that there is probable cause to believe the person under investigation is guilty of such public offense." § 21-413 A.R.S.

■ Even assuming that the failure of the court to instruct the grand jury as to the elements of probable cause is a valid ground for granting a motion to quash an indictment, especially in a case wherein it is obvious that there was probable cause to return the indictment, we do not find the record deficient in this regard. The State points out in its brief, and the defendant does not contradict, that the grand jury had been instructed as to probable cause in the following words:

"It is your duty to return an indictment charging the person under investigation with the commission of a public offense if, from all the evidence gathered, taken together, you are convinced that there is probable cause to believe the person under investigation is guilty of such public offense.

"Your primary function is to decide whether or not sufficient evidence has been produced to indicate that a crime probably has been committed by the person accused or stated another way, is upon credible evidence which you have heard, absent any explanation by the defendant, you're willing to indict, you should indict. If the evidence produced does not meet the standard necessary for an indictment, because you are convinced that you cannot conclude that a crime

probably has been committed by the accused, you should have no hesitancy in refusing to vote an indictment."

It would appear that for the purposes of charging the grand jury, there was adequate instruction as to probable cause, if indeed the statute and rules require this, and we find no error.

## DENIAL OF MOTION FOR NEW TRIAL

■ John Newhouse was endorsed upon the indictment, filed 9 December 1971, as required by the Rules of Criminal Procedure in effect at the time this action was commenced. Rules of Criminal Procedure, Rule 153, 17 A.R.S. John Newhouse had also been endorsed upon the previous information filed on 10 September 1971. No attempt was made by the defendant to locate this witness, and the defendant was not aware of the possible testimony of the witness until the report was filed the last day of the trial.

After the trial the defendant attempted to locate Newhouse and based his motion for new trial in part upon the failure of the County Attorney to reveal the testimony of the witness Newhouse and upon the testimony that Newhouse would present if located for a second trial.

We have held:

"* * * that a new trial for newly-discovered evidence is required if the introduction of the evidence at the trial would probably have changed the verdict, and if the defendant could not, with reasonable diligence, have discovered and produced it upon the first trial. State v. Sneed, 98 Ariz. 264, 403 P.2d 816 (1965). See also, State v. Schroeder, 100 Ariz. 21, 409 P.2d 725 (1966). * * *" State v. Thurston, 100 Ariz. 297, 302, 413 P.2d 764, 767 (1966).

And:

"* * * Rule 310 of the Rules of Criminal Procedure requires a new trial for newly discovered evidence (1) if its introduction at the trial would probably have changed the verdict, and (2) if the defendant could not, with reasonable diligence, have discovered and produced it upon the first trial. State v. Hill, 88 Ariz. 33, 352 P.2d 699." State v. Sneed, 98 Ariz. 264, 270, 403 P.2d 816, 820 (1965).

In the instant case, in addition to the lack of due diligence on the part of the defendant, the testimony of the witness Newhouse, consisting of observations of events which occurred after the shooting took place, would probably not have changed the verdict, and we do not believe it was an abuse of the trial court's discretion to deny the motion for new trial.

■ Defendant further contends, however, that it was misconduct on the part of the County Attorney in failing to make favorable evidence available to the defendant upon his request, citing Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and also State v. Fowler, 101 Ariz. 561, 422 P.2d 125 (1967), which held that fundamental fairness requires that evidence favorable to the defense be disclosed even though not requested by the defendant.

Although admittedly we do not know what the further testimony of the witness Newhouse would be, it would appear that the defendant obtained, however belatedly, all the evidence that the prosecution had concerning the witness Newhouse, and unlike the knife in State v. Fowler, supra, there was not an apparent effort to conceal this evidence. In fact, even though the contents of the statement were not known until the last day of the trial, a report made available to defendant earlier in the trial for the purpose of cross-examination of two officers who testified for the State contained information concerning the witness John Newhouse and what he observed. We find no error under the facts in the instant case.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.