519 P.2d 56

**The STATE of Arizona, Appellee,**

v.

**Larry J. LEE, Appellant.**

**No. 2752.**

Supreme Court of Arizona,
In Banc.

Feb. 27, 1974.

Rehearing Denied March 19, 1974.

Gary K. Nelson, Atty. Gen. by Cleon M. Duke, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa Co. Public Defender by John Foreman, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a jury verdict and judgment of guilt to the crime of sale of a dangerous drug, to wit: methamphetamine, § 32–1970(B), § 32–1996(C), and § 32–1901(9) A.R.S. Defendant received three years' probation.

Defendant raises three questions on appeal:

1. Was the identification of the defendant improper and did it taint the in-court identification?

2. Were the remarks of the prosecutor concerning an unavailable witness reversible error?

3. Did the delay in the filing of the complaint amount to a denial of due process?

The facts necessary for a determination of the matter on appeal are as follows. On the evening of 26 April 1972, Officer David G. Guzzetta, an undercover agent of the Phoenix Police Department, together with an informant, Charles Snavely, drove to a residence in Phoenix, Arizona. The informant went into the apartment complex and returned with a person, later identified as the defendant, who peered through the window of the automobile and talked with Officer Guzzetta. They conversed for about five minutes during which time the officer purchased a small bag of methamphetamine for $10. Officer Guzzetta was seated on the passenger's side of the car and the defendant was leaning through the open window on the driver's side. Following the purchase, the officer went to the Identification Bureau of the Phoenix Police Department and requested the file of the defendant, Larry Lee, having been told that this was the man who had sold him the methamphetamine. The file contained a photograph of Larry Lee, and based upon this identification the officer determined that it was the defendant Larry Lee who had sold him the methamphetamine. On 8 August 1972, Officer Guzzetta, after thirteen months of undercover work, "surfaced," and on 5 September 1972, Officer Guzzetta signed a complaint against the defendant who was not arrested until 10 October 1972 for the 26 April 1972 sale.

At the trial, Officer Guzzetta testified that he had also looked at the picture when he went over the departmental report in the file prior to the preliminary hearing and prior to the trial.

Although defendant testified at the preliminary hearing, he did not take the stand at the trial in the Superior Court where he was found guilty by a jury of sale of a dangerous drug.

## WAS THE IDENTIFICATION PROPER?

It was stipulated that no evidence of the identification of the defendant by the photograph in the file would be admissible before the jury and no such evidence was presented. We are not then concerned with the question of evidence of a pretrial photo-identification, but with the question of the in-court identification being tainted by an impermissible suggestive pretrial photograph identification.

Officer Guzzetta testified as follows:

"Q BY MR. HERTZBERG: Is the reason why you checked to see if the defendant had a photograph in a jacket because the police officers told you or someone told you that he had a record?

"A No, sir. I always make a positive identification of a suspect I had just purchased a narcotic or dangerous drug from, by this process or other process, to make positive identification of the person.

"Q So prior to the time you pulled the defendant's jacket, you had no knowledge whether or not he had a jacket or photograph on file, correct?

"A That's correct."

It is the contention of the defendant that the photographic identification was impermissibly suggestive and contrary to Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Simmons, supra, as well as prior decisions of this court, State v. Alexander, 108 Ariz. 556, 503 P.2d 777 (1972); State v. Lang, 107 Ariz. 400, 489 P.2d 37 (1971); State v. Yehling, 108 Ariz. 323, 498 P.2d 145 (1972), have indicated that there is great danger in an identification procedure that is so suggestive as to result in misidentification. This does not mean, however, that every identification procedure which falls short of the ideal makes subsequent in-court identification defective, for as the United States Supreme Court stated:

> "* * * we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photograph identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. * * *" Simmons v. United States, 390 U.S. at 384, 88 S. Ct. at 971, 19 L.Ed.2d at 1253.

We do not find in the instant case that the totality of the circumstances indicates that the identification was unduly suggestive.

The officer was an experienced police officer. He was trained in identification and knew at the time he was looking at the defendant that he would later be called upon to identify the defendant, possibly in court. He testified as follows:

"Q Was there anything obstructing your view of the face of the person who sold you the narcotics?

"A No, sir.

"Q Did you have occasion to make notes, either mental or in writing of the characteristics of the person's face?

"A Mentally, yes, sir.

"Q At what time did you do that?

"A At the time the sale was taking place.

"Q For what purpose were you doing that?

"A. Identification purposes.

"Q Are you certain, Officer, that the person that sold you those narcotics is in this room?

"A Yes.

"Q On what do you base that?

"A On the physical description of the subject. His characteristics. Weight, height."

After the purchase, he pulled the file at the police station not to determine if a particular suspect was the person who sold him the drugs, but to ascertain the name and record of a person he could already identify as the one who sold him the dangerous drugs. Having ascertained the name of the person, he was able to issue the complaint which resulted in the defendant's arrest. The facts do not support the contention that the in-court identification was tainted by the view of the photograph in the file prior to the issuance of the complaint or prior to trial. The witness was able to testify that irrespective of the picture he saw in the file, he could affirmatively identify the defendant as the one to whom he talked on the day in question.

Defendant further contends that after the hearing on the motion to suppress the in-court identification as mandated by State v. Dessureault, 104 Ariz. 380, 453 P. 2d 951 (1969), the trial court failed to make factual determinations as required by Dessureault, supra. In the instant case, a separate hearing was held which complied with the requirements of State v. Dessureault, supra. It appears that counsel had discussed the matter with the court in chambers and that at the conclusion of the hearing the court made the following statement:

> "THE COURT: Gentlemen, first it's ordered denying the defendant's motion to suppress identification. The Court, un-

less there's strenuous objection by counsels, will not state its reason at this time. We have discussed it. We are running late. Counsels are aware of my reason. I will make my record on it at a later point."

■ Counsel for the defense made no objection to this procedure and asked for no further elaboration from the court. Both counsel then stipulated that evidence of the out-of-court identification was prejudicial and should not be mentioned at trial. We feel that the court has complied with Dessureault, supra, in holding the hearing and then denying the motion to suppress, which denial is amply supported by the evidence. Dessureault, supra; State v. Darby, 105 Ariz. 115, 460 P.2d 9 (1969). If the defendant wanted findings of fact, he should have so requested at the time the court made its ruling.

## IMPROPER REMARKS OF COUNSEL

During his opening statement and again in his closing remarks, the prosecutor made reference to the informant Snavely. In the opening statement he stated:

"Officer Guzzetta, on the 26th day of April, in Phoenix, Arizona, Maricopa County, purchased a quantity of methamphetamine from Larry Lee, a dangerous drug. Officer Guzzetta did not work alone during this time. He had a fellow police officer who was a back-up officer working with him. He also was using a civilian person. We would call him an informant or snitch. This informant worked with Officer Guzzetta in assisting Officer Guzzetta to make appropriate contact, which would yield buys. This man's name is Charles Snavely. Mr. Snavely, who makes introductions—"

■ We do not believe that these remarks of the prosecutor in the opening statement were prejudicial, and the trial court properly denied the defendant's motion for a mistrial. Snavely was the informant and was part of the complete picture. We have stated:

"* * * The object of an opening statement is to apprise the jury of what the party expects to prove and prepare the jurors' minds for the evidence which is to be heard. Also, the extent to which counsel is permitted to go in making his statement is within the discretion of the court. The rule of the court will only be disturbed when this discretion is abused * * *." State v. Prewitt, 104 Ariz. 326, 333, 452 P.2d 500, 507 (1969).

■ Regarding the allegedly prejudicial closing remarks of the State, it is noted that the defendant's attorney in his argument to the jury stated:

"There was a witness there. His name was Snavely. He's not in Court. Guzzetta obviously knows him. He's not in Court.

"Who knows where he is? Who knows whether he's available? If they are going to make a case all these months afterward and they want a jury to feel there is no lack of evidence, they feel there is sufficient proof, why don't they bring in someone who was right there. "Maybe he couldn't testify that they saw the transfer but they could testify, 'I was there. I got out of a car. I was the driver of the car,' and bingo, that's the man or maybe bingo, that's not the man.

"Neither I nor Mr. Ostlund are allowed to speculate as to why Snavely is not here because it is not in evidence one way or the other, but the fact remains when you consider whether there is sufficient evidence should not you consider the fact that the evidence is lacking in that an eyewitness to the person involved, the person who made the sale, has not been brought in, as is the burden of the prosecutor, not the defendant."

To which the State replied in its closing argument:

"There was a suggestion about the other person who was around the area, Mr. Snavely, and we are not allowed to tell you where he is because we don't know where he is, but we are allowed to draw

reasonable inferences from the testimony."

The defendant did not object to these remarks either at the time they were made or after the close of the argument before the matter was submitted to the jury, and the remarks of the prosecutor, while not substantiated by the evidence, were not reversible error.

## DELAY IN FILING THE COMPLAINT

At the preliminary hearing the defendant testified as follows:

"Q As the result of the delay in filing of the complaint from April 26, 1972, until September 5, 1972, have you been unable to recall where you were or any of the specific events in which you were a part on April 26, 1972?

"A Yes.

"Q You feel, based upon your own knowledge of your own ability to recollect matters, that if you had been charged with this offense as soon as a week or so after April 26, 1972, you would be able to recall where you were on April 26, 1972, and who you were with?

"A Yes.

"Q And do you further feel as a result of the delay in this case that you are unable to prepare a defense insofar as you are unable to advise counsel where you were on April 26, 1972, or with whom you were in company?

"A Yes, I do.

"Q Do you have any specific recollection of what you did on April 26, 1972, or with whom you were in company?

"A No, I don't.

"Q Is there anything significant about April 26, 1972, such as it being your birthday or a date you would normally remember?

"A No."

Defendant contends that the pre-information delay of some six months from the commission of the crime to the issuance of the complaint and the arrest was a denial of due process of law. We have held that the right to a speedy trial commences at the time the accused has been held to answer by a magistrate, State v. Maldonado, 92 Ariz. 70, 373 P.2d 583 (1962), or after an indictment has been returned, Boccelli v. State, 109 Ariz. 287, 508 P.2d 1149 (1973); State v. Brannin, 109 Ariz. 525, 514 P.2d 446 (1973). The United States Supreme Court has stated:

" * * * The Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused' * * *.

* * * * * *

" * * * it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.

"Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. [footnote omitted] But we decline to extend the reach of the amendment to the period prior to arrest." United States v. Marion, 404 U.S. 307, 313, 320–321, 92 S.Ct. 455, 459, 463–464, 30 L.Ed.2d 468, 474, 479 (1971).

■ We have read the record and we find no denial of defendant's right to speedy trial. Neither do we find that defendant has been denied due process of law by the pre-arrest delay. State v. Saiz, 103 Ariz. 567, 447 P.2d 541 (1968).

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.