554 P.2d 926

**STATE of Arizona, Appellee,**

v.

**Terrance TAYLOR, Appellant.**

**No. I CA–CR 1329.**

Court of Appeals of Arizona,
Division 1,
Department B.

July 29, 1976.

Rehearing Denied Sept. 16, 1976.

Petition for Review Denied Oct. 5, 1976.

Bruce E. Babbitt, Atty. Gen. by Shirley H. Frondorf, Asst. Atty. Gen., Phoenix, for appellee.

George M. Sterling, Jr., Phoenix, for appellant.

## OPINION

WREN, Judge.

After a trial by jury, appellant was convicted of robbery and sentenced to not less than 12 nor more than 15 years in the Arizona State Prison. A survey of the record and appellant's argument on appeal requires a resolution of the following issues:

1. Was the pretrial photographic lineup unduly suggestive?

2. Was the in-court identification the "fruit" of an illegally obtained confession?

3. Did the discrepancy between the victim's original description of the rob-

ber and appellant's appearance make the in-court identification inadmissible?

4. Were appellant's statutory or constitutional rights to a speedy trial violated?

The facts essential to the Court's resolution of these issues are as follows: On September 23, 1974, shortly after 6:00 p. m., Morris Chez was robbed by two black males. The victim gave a description of both robbers to the police. The following day appellant was arrested on a different charge. Because his appearance matched the description of one of the robbers, a Phoenix police officer, Kenneth D. Patterson, interrogated appellant about the crime. Appellant originally denied committing the robbery, but later claimed that he was present when the robbery occurred and gave chase to the robber. Ultimately, he admitted that he robbed the victim, but stated that he was alone. Officer Patterson was not sure that appellant adequately understood his rights, and apparently had some doubts as to the reliability of his confession.

The following day, Officer Patterson asked the victim to come to the police station and view some photographs. After being handed six photographs of young black males, the victim picked out appellant, stating that "he looks familiar, but I can't say for sure." Officer Patterson then showed the victim two other sets of six photographs each. The victim did not recognize anyone in these two sets. According to the victim, after he identified appellant, he was told appellant's name. The victim testified at the trial that his identification of the picture was positive and without any doubt.

The next time the victim saw appellant was at the preliminary hearing when he positively identified him as one of the robbers. Although he testified that the photo lineup "helped" in his identification of appellant, he claimed that the name of the appellant did not assist him. He stated that he could have identified appellant at the preliminary hearing without the photo

lineup and that there was nothing suggestive within the photo display. The trial court denied appellant's motion to suppress the victim's in-court identification of appellant without specifying its reasons.

## PHOTOGRAPHIC LINEUP

■ Our initial inquiry is to determine whether the photo lineup was unduly suggestive. Whether there has been a reliable in-court identification of the defendant, untainted by prior identification procedures, is preliminarily a question for the trial court which will not be disturbed on appeal unless there is clear and manifest error. *State v. Murray,* 106 Ariz. 150, 472 P.2d 19 (1970); *State v. Darby,* 105 Ariz. 115, 460 P.2d 9 (1969).

■ In setting forth the standard for reversing a conviction based on eye-witness identification, the United States Supreme Court has stated "convictions based on eyewitness identification at pretrial identification by photograph will be set aside on that ground [that the preliminary identification procedures were improper] only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The same test was used by the Arizona Supreme Court in *State v. Yehling,* 108 Ariz. 323, 498 P.2d 145 (1972).

We find nothing in the record before us to indicate that the photo lineup was unduly suggestive. Officer Patterson did not tell the victim that he had a suspect in mind when he showed him the photographs. Further, although reproductions of only the first set of photos is included in the record on appeal, an examination of that set reflects nothing to indicate any undue suggestiveness in the type of photographs selected. In fact, Officer Patterson testified that he tried to select photographs similar in appearance. Moreover, appellant does not contend that the selection of photographs was unduly suggestive. There was no suggestion as to which was the ap-

pellant, and the victim testified that there was nothing done or said by the officer to suggest that he should pick the appellant's photo. In the absence of any evidence that the lineup was unduly suggestive, we cannot say that the trial court erred in permitting the in-court identification. See *State v. Yehling,* supra (Defendant picked from six black and white photos.); *State v. Richie,* 110 Ariz. 590, 521 P.2d 1136 (1974) (Defendant selected out from a photo lineup of six photographs.); *State v. McDonald,* 111 Ariz. 159, 526 P.2d 698 (1974) (Defendant identified from a photo lineup consisting of five photos.)

In support of his contention that the officer improperly gave the identifying victim the appellant's name after the lineup was shown, appellant cites *State v. Lang,* 107 Ariz. 400, 489 P.2d 37 (1971). However, in *Lang,* the police told the victim Lang's name *prior* to the photo lineup, and was then shown three photos, one of which contained a name other than Lang's, and in which the individual had a mustache. The court held that the victim in effect was selecting from only two photographs and therefore the lineup was unduly suggestive. Further, the court noted that the robbers wore disguises and the police were therefore required to exercise the "utmost care" in the identification process. In the current case, the victim was shown 18 photographs and appellant was not disguised. Further, the victim testified that the name did not help him to identify appellant.

In addition, our Supreme Court has held that where the lineup is not unduly suggestive in the first place, a subsequent comment that the victim has correctly identified the suspect cannot taint an initially fair identification procedure or the in-court identification. *State v. McDonald,* supra; *State v. Richie,* supra; *State v. Murray,* supra. We feel that the providing of appellant's name is not reversible error in the current case.

Having determined that the photo lineup was not unduly suggestive, there is no need to determine whether the requirements of

*State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969) cert. denied 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970) were met. Nor, having determined that the confrontation procedure was not suggestive, is there any need to examine the requirements of *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The victim's ability to otherwise observe and identify the robbers is sequential to a suggestive procedure. *State v. Harris,* 23 Ariz. App. 358, 533 P.2d 569 (1975); *United States v. Hurt,* 155 U.S.App.D.C. 217, 476 F.2d 1164 (1973); *United States v. Kimbrough,* 481 F.2d 421 (5th Cir. 1973).

■ The second issue that we need to decide in disposing of appellant's appeal is whether, since he was in custody at the time of the photographic lineup, a physical lineup was required instead. In support of this contention, appellant cites several Illinois cases which hold that the police should use photo lineups only when they can show extenuating circumstances. *People v. Williams,* 60 Ill.2d 1, 322 N.E.2d 819 (1975); *People v. Jackson,* 54 Ill.2d 143, 295 N.E.2d 462 (1973); *People v. Holiday,* 47 Ill.2d 300, 265 N.E.2d 634 (1970). Preliminarily, appellant did not make this argument to the trial court, and therefore the police had no need to show any extenuating circumstances which might have justified the use of the photographic identification. Moreover, appellant was not in custody for the present offense. Although he had made a "confession", Officer Patterson could have had doubts about its veracity because the confession conflicted with the victim's story. Accordingly, it could be that Officer Patterson was still attempting to narrow the field of suspects rather than to develop evidence specifically against appellant. Under these circumstances, we cannot say that the photo lineup was misused even under the Illinois authorities.

■ Further, the general rule appears to be that it is permissible to use photographic lineups even where appellant is in custody. *Tafoya v. Eyman,* 315 F.Supp. 204 (D.Ariz.1970), aff. 455 F.2d 1265 (9th

Cir. 1972); *United States v. Jackson,* 166 U.S.App.D.C. 166, 509 F.2d 499 (1974). To require physical lineups in every case where the defendant is in custody on any charge would be to place an undue burden on the police and substantially hamper their investigatory efforts. As noted in *Jackson,* a photographic lineup is not constitutionally impermissible because unnecessary.

On the other hand, it has been stated that the use of photographic lineups may increase the danger of misidentification. In *Simmons v. United States,* the court reasoned:

> "Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." 390 U.S. at 383–384, 88 S.Ct. at 971.

The same caveats may well be expressed, in our opinion, to a physical lineup, and we note that there is no agreement as to whether photographic lineups are preferable to physical ones. Compare *United States v. Ash,* 413 U.S. 300, 324, 93 S.Ct. 2568, 2581, 37 L.Ed.2d 619 (1973) (Stewart, J., concurring) (There are "fewer possibilities of impermissible suggestions when photographs are used.") with Grano, J., "Kirby, Biggers, and Ash," 72 Mich.L.Rev. 717 (1974).

■ We do not accept appellant's argument that the confrontation at the preliminary hearing had all of the evils inherent in a "one man show-up", nor that such a confrontation during the preliminary hearing, even though changing a tentative identification into a positive one resulted in an impermissible taint because the original identification was made by selecting one photo out of several, rather than one man out of several others in a physical lineup. We find no error in the failure to utilize a physical lineup even though the defendant was in custody.

## "FRUIT" OF AN ILLEGAL CONFESSION

■ Appellant next contends that the photo lineup was the result of appellant's confession. He argues that because the trial court found that appellant had not knowingly and understandingly waived his *Miranda* rights and suppressed the confession, that the in-court identification should have been suppressed as well. The test to be applied in determining whether evidence is the "fruit of the poisonous tree" is whether the government learned of the evidence from an independent source. The United States Supreme Court has also stated the test as "whether the evidence to which instant objection is made has been come at by exploitation of that illegality or instituted by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) quoting Maguire, Evidence of Guilt, 221 (1959).

■ Once again, appellant did not raise this argument at the trial court level so this Court does not have the benefit of the trial court's ruling in this matter. Therefore, we could hold that appellant has waived his rights to raise this objection on appeal. However, a review of the record indicates that the identification procedure

was sufficiently independent of the confession so that it cannot be held to be an unlawful and prohibited result.

Officer Patterson originally interrogated appellant because his description matched that of one of the assailants, and perhaps because of information obtained from people in the neighborhood. Even after appellant's confession, it appears that Officer Patterson still had doubts about his participation in the robbery. Accordingly, it does not appear that the confession was the sole or even the primary motivating factor in including appellant's picture in the photo lineup. Defendant's argument here must fail.

## DISCREPANCY IN DESCRIPTION

■ Appellant's last contention with regard to the pretrial identification is that the discrepancy between the initial description of appellant by the victim and appellant's actual appearance created an inference that the lineup was unduly suggestive. After the robbery, the victim provided the police with the following description of the two men:

"Suspect number 1: negro male, 24 to 25 years age; 6'0" to 6'1"; 180-190 pounds —medium afro, clean shaven, medium complexion, wearing maroon knit shirt and brown pants, neat appearance, and missing two front teeth on left of mouth. Suspect number 2: negro male, 22 years 5'6" to 5'8"; 160-165 pounds, regular hair cut, dark complexion, clean shaven, wearing black knit short sleeve shirt and black pants."

Throughout the proceedings, the victim referred to appellant as suspect number 2. According to both the State and appellant's counsel on appeal, appellant's physical description matches that of suspect number 1 and not number 2. The appellant places great emphasis on the fact that appellant was missing two front teeth and the description of suspect 1 refers to the missing front teeth. During the *Dessureault* hearing, appellant's counsel asked the victim whether it would make any difference to

him to know that appellant was missing his two front teeth. The victim responded that it would not.

Unfortunately, appellant's physical description does not appear in the record of either the *Dessureault* hearing or the trial. One police report described appellant as between 24 and 25 years of age, 6' tall and 180-190 pounds, while the probation report described him as 20 years old, 5'7" tall and 120 pounds. Both the probation report and the psychiatric report indicate that appellant was missing two of his front teeth.

Both the jury and the trial judge had the opportunity to view appellant at the time of trial. Any discrepancy between the initial description and his physical appearance was a matter of fact to be resolved by the trial court initially, and ultimately by the jury. This Court's function is not to decide the case anew, particularly when it is appellant's appearance that is the debated point. The eye-witness testified that appellant was definitely the man who robbed him. Any difference between his initial description and the in-court identification goes only to impeach this testimony.

## SPEEDY TRIAL

Appellant's final ground of appeal is whether his statutory right to a speedy trial under A.R.CrimP. 8.2(a) and the Sixth Amendment to the United States Constitution were violated. The record before this Court is woefully deficient in providing the requisite facts to determine this issue. However, appellant's statement of facts is not contradicted by the State, and the dialogue between counsel at the time of the motion to dismiss before the trial court reveals certain aspects which were not disputed. Accordingly, we will accept the following assertions as true.

Appellant was originally charged for the current offense on September 27, 1974. However, the justice of the peace dismissed this charge because the victim could not be located and the State could not proceed without him. The charge was subsequently filed again on January 10, 1975.

Trial was held on May 6, 1975. Some portions of the time between the second filing and the trial constituted excluded periods under the rule,[1] and appellant does not contend that if the time is calculated from the filing of the second complaint his rights under Rule 8 were violated. His argument relates to the date of the original warrant.

The Comment to Rule 8.2(b) provides: "If the magistrate refuses to hold the defendant to answer at the preliminary hearing and dismisses the complaint, then later a similar complaint is refiled after the discovery of new evidence, the time limit runs from the initial appearance on the second complaint. This is in accordance with the ABA, Standards, supra, at § 2.2. However, dismissal of a complaint by the prosecutor solely to avoid the running of the time limit is prohibited by Rule 16.7(a)."

■ The general principle set forth by the ABA Standards provides that the critical distinction in determining whether the time periods begin to run anew is whether the dismissal was on the prosecution's or the defense's motion. The ABA Standards reason that to allow dismissal by the prosecutor to operate so as to begin the time running anew would open the way for complete evasion of the speedy trial guarantees. § 2.3(f). The ABA Standards provide that a dismissal by the prosecutor merely tolls the running of the time period. However, Arizona did not adopt this portion of the ABA Standards, but rather provided that the prosecution is not entitled to a dismissal where the purpose of the dismissal is to avoid the provisions of Rule 8. See Rule 16.7(a). Finally, recent cases, although not precisely on point, indicate that the time limits should begin anew on a dismissal such as in this case. In *Berger v. Superior Court*, 111 Ariz. 524, 534 P.2d 266 (1975) the court held that when the court grants a motion of the defendant for a new finding of probable

cause, a new indictment and arraignment give rise to a new time period under Rule 8. Likewise in *State v. Avriett*, 25 Ariz. App. 63, 540 P.2d 1282 (1975) the court held that a refiling after a dismissal for violation of Rule 8, starts the time period to run anew. Therefore, we hold that the filing of the second complaint in the current case triggered the time limits of Rule 8 to run anew and there was no violation of the rule.

■ In his summary argument, appellant contends that he was denied his Sixth Amendment right to a speedy trial as well as his statutory right under the Rules of Criminal Procedure. However, he does not discuss the Sixth Amendment issue in the brief itself, nor does he cite any cases to support his position. However, even assuming that the Sixth Amendment claim is applicable to the current case (Compare *State v. Lee*, 110 Ariz. 357, 519 P.2d 56 (1974)), we do not think that this right has been violated in the current case. The Supreme Court has set out a four point test for determining whether the constitutional right to a speedy trial has been violated. These factors include (i) the length of the delay, (ii) the reason for the delay, (iii) defendant's assertion of his right to a speedy trial and (iv) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). None of the four factors are a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). However, upon a review of these four factors in the current case, we do not think that appellant's constitutional right to a speedy trial has been violated.

First, the time lapse from appellant's initial arrest on the charge until his trial was just slightly more than seven months. Second, it appears that the delay in filing the new arrest warrant was due to the State's inability to relocate the victim. In

1. Rule 8.4, Rules of Criminal Procedure.

the absence of other evidence or showing of bad faith on the part of the State, we cannot say that this delay was unreasonable. Third, defendant did not assert his right to a speedy trial until the day of trial and at no time demanded that his trial date be accelerated. Finally, appellant has shown no prejudice by reason of the delay. In light of the foregoing facts, we cannot say that a delay of just over seven months is a denial of appellant's federal constitutional rights. See *State v. Saiz,* 103 Ariz. 567, 447 P.2d 541 (1968) (delay in refiling of complaint of five years held not to be a violation of the Sixth Amendment).

For the foregoing reasons, the judgment and sentence of the trial court are affirmed.

JACOBSON, P. J., and SCHROEDER, J., concur.