584 P.2d 572

**The STATE of Arizona, Appellee,**

v.

**William Edward MEAD, Jr., Appellant.**

**No. 2 CA–CR 1223.**

Court of Appeals of Arizona,
Division 2.

June 8, 1978.

Rehearing Denied July 18, 1978.

Review Denied Sept. 12, 1978.

John A. LaSota, Jr., Atty. Gen. by Philip G. Urry, Asst. Atty. Gen., Tucson, for appellee.

Thomas E. Higgins, Jr., Tucson, for appellant.

## OPINION

HOWARD, Judge.

Appellant was found guilty by a jury of robbery while armed with a gun and sentenced to not less than five nor more than nine years in the Arizona State Prison. The facts considered in the light most favorable to upholding the verdict and the decision of the trial court on the motion to suppress are as follows. On January 27, 1977, at approximately 11:30 a. m., a man entered the Town and Country Pharmacy in Tucson, Arizona, and handed the pharmacist a handwritten note containing a list of drugs which he demanded that the pharmacist place in a garbage bag. The robber had a handgun in his waistband and his hand was on the grip when he made known his demands. Also present was a clerk, Barbara Lamb, who was then on the telephone. The pharmacist noted, among other things, that the man had his chin covered with white adhesive tape and that his boots were also taped. After placing some drugs in the bag, the pharmacist handed the note back to the robber who took the note and fled with the drugs to a station wagon parked outside. As the robber ran towards the station wagon he was spotted by Maryanne Kowbuz who was driving past the pharmacy on the way to get some gas. She immediately suspected that a robbery was in progress and memorized the license plate of the station wagon. When she arrived at the gas station she wrote down the license plate number and called the police giving them the number and a description of the vehicle.

Later that afternoon the police were informed that a station wagon fitting the description of the one involved in the robbery was involved in a hit-and-run accident with a city bus. Subsequently, this vehicle was reported to be in a trailer park on East Bellevue. Sgt. Penning, who had earlier investigated the robbery at the pharmacy, dispatched Officers Herrera and Norris to the trailer park to determine whether the vehicle was the one involved in the armed robbery and the accident with the bus. Sgt. Penning accompanied by Det. Adams, also went to the trailer park. While Officers Norris and Herrera went into the front of the park, Penning and Adams went to the rear to prevent anyone from fleeing. Norris and Herrera saw the station wagon in the park and approached two men who were working on a motorcycle near the station wagon. Norris had prior personal experience with this particular trailer park. He had seen known criminals enter the premises armed with handguns and knives. Furthermore, the trailer park had a reputation with the police department as a place where the criminally-inclined element of the population resided.

Norris asked one of the two persons working on the motorcycle if they could see the owner of the station wagon. One, who

identified himself as Mike McClay, said that he lived in the nearby trailer and that the owner of the station wagon, Jeffrey Davis, was in the trailer. He invited Officer Norris into the trailer while he went to get Mr. Davis. Herrera, who remained outside, noticed that the other individual working on the motorcycle was carrying a revolver and disarmed him.

Officer Norris entered the trailer with McClay. While Norris stood in the living room, McClay went into the kitchen and came back out with Jeffrey Davis and another person. They all exited the trailer. Herrera asked Norris if there was anyone else in the trailer. Mr. Davis replied in the negative, but noises from within the trailer caused Herrera to enter. He came back out with appellant, McClay's sister, and another subject. In the meantime, Det. Adams had arrived at the trailer. When Herrera exited, Det. Adams asked him if there was anyone else inside the trailer. Herrera told him that he was not sure because he had not checked the bedroom. He and Adams went back into the trailer. While looking for other subjects, a period of less than a minute, Det. Adams saw, in plain view, evidence of the robbery at the Town and Country Pharmacy. He came out of the trailer with Herrera and instructed the officers not to let anyone back into the trailer. Adams also took the boots which appellant was wearing. They were taped with white adhesive tape. It was observed that the license on the station wagon matched the number given by Maryanne Kowbuz, except for the last two digits which were reversed.

Adams called the justice of the peace for a telephonic search warrant and after receiving it, conducted a search of the trailer which revealed bottles of narcotics from the Town and County Pharmacy, a roll of white adhesive tape, the note handed to the pharmacist, $71 in cash which was found in a closet and a revolver hidden between two cushions.

 Appellant now attacks the validity of the search warrant and the admissibility of certain evidence. He first contends that the telephonic search warrant issued by the justice of the peace was invalid because the recording of the statement given by the officer and the transcription certified by the magistrate do not contain the administration of the oath to the officer. Both Det. Adams and the justice of the peace testified that Adams was in fact, placed under oath prior to the giving of the statement. A perusal of the certified transcript of the oral statement does contain language which indicates that Adams was giving the statement under oath. A.R.S. Sec. 13–1444(C) states:

> "In lieu of, or in addition to, a written affidavit, or affidavits, as provided in subsection A, the magistrate may take an oral statement under oath which shall be recorded on tape, wire, or other comparable method. This statement may be given in person to the magistrate, or by telephone, radio, or other means of electronic communication. This statement shall be deemed to be an affidavit for the purposes of issuance of a search warrant. In such cases if a recording of the sworn statement has been made, the magistrate shall direct that the statement be transcribed and certified by the magistrate and filed with the court."

The purpose of the recording is not to insure that it is given under oath, but to insure that the contents of the oral statement are accurately perpetuated. We are unable to find in A.R.S. Sec. 13–1444(C) any requirement that the administration of the oath itself be recorded. The only requirement is that the oral statement itself be recorded. We find no error in the trial court's ruling that the telephonic search warrant was not invalid because of the failure to record administration of the oath.

Appellant next contends that the search warrant was invalid because it was issued as a result of an unlawful search and thus under the doctrine of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), his motion to suppress the evidence seized in the trailer should have been granted. He concedes that there is evidence which would support a conclusion that the first entry into the trailer by Offi-

cer Norris was lawful because of Mr. McClay's consent. However, he claims that the other entries by Herrera and Herrera and Adams together were not with the consent of either Mr. McClay or the appellant and therefore, even if Herrera and Adams saw contraband in the trailer which was in plain view, this lack of consent operated to vitiate the plain view doctrine. We do not agree.

■ Assuming arguendo that Mr. McClay's consent to enter the trailer did not extend pass the initial entry by Norris, the question to be decided is whether Herrera and Adams were lawfully in the trailer when they saw the contraband. We believe that they were. A cursory search for the possible occupants of the trailer who could have posed a danger to the law enforcement officers is justifiable. *State v. Sardo,* 112 Ariz. 509, 543 P.2d 1138 (1975); *State v. Stauffer,* 112 Ariz. 26, 536 P.2d 1044 (1975). The officers testified that their entry was for the purpose of determining whether there were any more people in the trailer in order to insure the safety of the officers. When consideration is given to the fact that the officers knew that the trailer court was frequented by criminals; that the station wagon parked in front of the trailer fit the description of the vehicle involved in an armed robbery; that persons entering the trailer park were known at times to be armed; and that one individual was disarmed outside of the trailer, the officers' concern for their safety was well justified and authorized their entry into the trailer to make a cursory search for other persons who might be there.

■ Appellant next asserts that the trial court erred when it admitted into evidence the .44 Magnum handgun found in the trailer. When the weapon was offered into evidence, appellant objected on the ground that there was no showing that the weapon was the one or similar to the one which was used in the robbery. At that point, the objection was well-taken. However, the court allowed the weapon to be introduced into evidence. The error which occurred at that point was rendered harmless when ap-

pellant, without objection, allowed the state to introduce into evidence a picture of the pistol which was taken by the police in the position in which it was found inside the trailer. And, subsequently, one of the law enforcement officers was permitted to testify, without objection, that the handgun involved in the robbery was found inside the trailer.

■ Lastly, appellant contends the trial court erred in allowing the in-court identification of him by the witnesses Scofield and Kowbuz. He contends that the "lineup" at the trailer park was unduly suggestive. As far as the pharmacist, Scofield, is concerned, the contention is without merit since he was unable to make an in-court identification of appellant at trial. In his direct examination no mention was made of any attempts to identify appellant and he was not asked to make an in-court identification. It was appellant, on cross-examination, who brought out the circumstances of the pharmacist's attempted identification at the trailer court and in a photographic lineup. On redirect examination the pharmacist did testify that appellant was the person whom he did not eliminate after the lineup; however, it was appellant who opened the door to the entire subject of the pharmacist's identification of him. A party may not invite error at the trial and then assign it as error on appeal. *United States v. White,* 377 F.2d 908 (4th Cir. 1967); *State v. Vidalez,* 89 Ariz. 215, 360 P.2d 224 (1961) nor will he be permitted to take advantage of an error which was a natural consequence of his own actions. *State v. Crocker,* 275 S.W.2d 293 (Mo.1955).

■ As far as the witness Kowbuz is concerned, the alleged undue suggestiveness stems from the fact that although all the persons who appeared in the lineup at the trailer were similarly dressed, appellant was the only one who had no facial hair. Appellant had the burden to establish that the circumstances were so suggestive as to give rise to a substantial likelihood of irreparable misidentification. *People v. Frazier,* 25 Ill.App.3d 761, 324 N.E.2d 10 (1975). There is no requirement for either lineups or "in-court identification" that the accused

be surrounded by persons nearly identical in appearance. *United States v. Reid*, 517 F.2d 953 (2nd Cir. 1975). The witness did not identify appellant because he was the only one in the lineup without facial hair. We are therefore not faced with the type of situation which occurred in *Israel v. Odom*, 521 F.2d 1370 (7th Cir. 1975) where the accused was the only person in the lineup to wear glasses which was an outstanding feature of the assailant's appearance to the victim and was an integral part of the description of the assailant which the victim provided to the police. The witness Kowbuz identified appellant immediately and without hesitation at the lineup at the trailer park. Her identification was based upon his general appearance and bone structure. When she saw appellant running from the pharmacy she made it a point to observe him closely because she believed a robbery was in progress. The totality of the circumstances here do not point to a substantial likelihood of misidentification. See *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.