693 P.2d 911

**STATE of Arizona, Appellee,**

v.

**Don Lester MEEKER, Appellant,**

No. 5986.

Supreme Court of Arizona,
In Banc.

Dec. 21, 1984.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel Criminal Div., Linda A. Akers, Asst. Attys. Gen., Phoenix, for appellee.

E. Sharon Storrs, Phoenix, H. Allen Gerhardt, Jr., Tempe, for appellant.

Don Lester Meeker, in pro. per.

GORDON, Vice Chief Justice:

Defendant was indicted on nine counts of armed robbery, class two felonies and one count of aggravated assault, a class three felony. The state alleged that these offenses were committed while defendant was on probation in violation of A.R.S. § 13–604.01. After a jury trial, defendant was convicted on all ten counts. Defendant was sentenced as follows: Count I (armed robbery), life imprisonment consecutive to the sentence defendant is presently serving in CR–126968; Counts II-VIII (armed robbery), life imprisonment concurrent to Count I; Count IX (armed robbery), life imprisonment consecutive to Counts I-VIII, and Count X (aggravated assault) life imprisonment consecutive to Count IX, resulting in three consecutive life imprisonment terms.

Thereafter defendant filed a petition for post conviction relief pursuant to Rule 32, Ariz.R.Crim.P., 17 A.R.S. A hearing was conducted and the trial court denied the petition. This case is before this Court on defendant's petition for post conviction relief consolidated with defendant's direct appeal. We have jurisdiction pursuant to Ariz. Const., art. 6, § 5(3) and A.R.S. §§ 13–4031 and 13–4033.

## INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal defendant raises four issues relating to ineffective assistance of counsel. In his petition for post conviction relief, defendant's attorney raised several issues relating to ineffective assistance of counsel. The issues raised in the petition for post conviction relief will be discussed to the extent that they do not overlap the issues raised in his appellate brief.

Defendant first claims he was denied effective assistance of counsel because his attorney did not request a hearing pursuant to Rule 609, Ariz.R.Evid., 17A A.R.S., to prohibit the use of his own prior felony conviction to impeach him should he testify at trial.

The test for ineffective assistance of counsel in Arizona is now a two prong test as espoused by *State v. Lee*, 142 Ariz. 210, 689 P.2d 153 (1984). The first prong, which comes from *State v. Watson*, 134 Ariz. 1, 653 P.2d 351 (1982) (rejecting the "farce, sham or mockery of justice standard"), requires that the attorney show at least minimal competence in representing a criminal defendant. *See also Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (this first prong is similar to the first element of the *Strickland* test.) In explaining the requirement of "minimal competence," the Court in *Watson* stated:

"Generally, the concept of minimal professional competence can be described and applied without great difficulty. There is general agreement on many of the areas of what constitutes proper defense practice in criminal cases. In representation of a person accused of crime, every defense attorney would be expected to file pre-trial motions when the facts raise issues concerning the voluntariness of statements, the legality of searches, or the suggestiveness of identification. Failure by an attorney to pursue such matters would be considered representation which falls below the minimum standards of professional competence required of defense counsel."

134 Ariz. at 4–5, 653 P.2d at 354–55.

The second prong of our test of ineffective assistance of counsel, adopted in *State v. Lee, supra*, from *Strickland, supra*, permits reversal only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Lee*, 142 Ariz. at 214, 689 P.2d at 157, quoting *Strickland, supra*, at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In *Lee* we defined "reasonable probability" as less than "more likely than not but more than a mere possibility." *State v. Lee*, 142 Ariz. at 214, 689 P.2d at 157. Thus, even though defendant may show that counsel lacked minimal competence in making particular errors, the defendant must show they had an actual adverse effect on the defense.

"It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland, supra,* at ——, 104 S.Ct. at 2067, 80 L.Ed.2d at 697. In setting out the guidelines for measuring the adverse effect of counsel's errors, the Court stated:

"In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Strickland, supra,* at ——, 104 S.Ct. at 2069, 80 L.Ed.2d at 698–99.

■ As to the first prong of the test for ineffective counsel, we find that counsel did not err in failing to request a 609 hearing on defendant's priors. Although in most circumstances a request for a 609 hearing to contest the use of priors would appear to be the norm, the factual circumstances in this case indicate a reasoned tactical decision to forego such a hearing.

The colloquy between the trial judge and defense counsel relating to the 609 hearing follows:

[The Court] "Court inquired to Mr. Hendrickson relative to there being no request for a 609 hearing for Mr. Meeker. The Court having understood that the defendant does, in fact, have priors and

asked him if he proposed to request one, and if so, let's resolve it now. Basically that was my bottom line question, or if his client was not going to take the stand, I'll let Mr. Hendrickson respond and advise for the record what he advised to the Court at that time.

"MR. HENDRICKSON: Thank you, your Honor. I have discussed the matter with my client and we have determined that we will not file a motion for a 609 hearing, based on the fact that my client's priors are for relatively minor non-violent offenses. We felt that it would be better to be candid about it rather than to have a jury speculate on what felonies he may have committed.

"THE COURT: Was that in one of the only two meetings that you had with him?

"MR. HENDRICKSON: That was one of the 300 phone calls that I had with him."

■ Apparently defense counsel thought it advantageous to have the prior convictions revealed rather than to hide them from the jury so the jury would discover that defendant had a relatively short and minor nonviolent criminal history rather than a long prior record of similar violent crimes. Thus, the jury would discover that defendant had a prior conviction for criminal trespass and not speculate that he may have committed other armed robberies. Disagreements as to trial strategy or errors in trial will not support a claim of ineffective assistance of counsel as long as the challenged conduct could have some reasoned basis. *State v. Tison,* 129 Ariz. 546, 633 P.2d 355 (1981) *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982); *State v. Rodriguez,* 126 Ariz. 28, 612 P.2d 484 (1980). Not only did defense counsel articulate his tactical reason for not pursuing a 609 hearing but he discussed the matter with the defendant, and according to counsel defendant agreed that they should "not file a motion for a 609 hearing." We believe that the strategy articulated by defense counsel was rationally based and that the decision not to seek

a rule 609. hearing demonstrated minimal professional competence. *Cf. State v. Hankins,* 141 Ariz. 217, 686 P.2d 740 (1984); *State v. Oppenheimer,* 138 Ariz. 120, 673 P.2d 318 (App.1983).

Additionally, even if the failure to request a rule 609 hearing was error by counsel, under the second prong of our ineffective counsel test adopted in *Lee* such error did not prejudice defendant. Defendant did not testify at trial, and thus the defendant's prior felonies were never brought to the attention of the jury. Defendant's choice in not testifying was not based on the prospect of being impeached by the prior felony convictions but was based on rebuttal evidence held by the state. At the post conviction relief evidentiary hearing, defendant's trial counsel testified that he advised him of the state's use of rebuttal evidence.

"Q. Why did you advise—let me ask you, first of all, did you advise the defendant not to take the witness stand?

"A. Yes.

"Q. Why did you advise the witness not to take the witness stand?

"A. Because of the evidence that the State had that I previously enumerated, indicating that the defendant's story, or the defendant's alibi was going to be a fabrication, the tape recordings, the script, and Mr. Reed's potential testimony, all those things would tend to indicate, if they were used, that the defendant's alibi was fabricated.

"We thought that it would be harmful to his cause for him to testify and then for the State to impeach with that kind of evidence. So we advised him not to testify.

"Q. You told him that; is that correct?

"A. Sure. Yes.

"Q. After discussing that with him, did he say that he agreed with your analysis that he shouldn't take the witness stand?

"A. I don't recall what he said. He did indicate in some manner that he didn't want to take the witness stand."

After the post conviction relief hearing the trial judge found that "defendant did not testify * * * for other reasons, namely: rebuttal evidence held by the state." Thus, it is apparent that defendant's failure to take the witness stand was not based on the impeachment evidence of his prior conviction.

■ Defendant next argues that he was denied effective assistance of counsel because defense counsel did not request a 609 hearing to determine the admissibility of defense witness Dale Cauthern's prior felony convictions. Cauthern was an alibi witness for defendant. We find that even if error, defense counsel's failure to pursue a rule 609 hearing was harmless.[1] Cauthern was one of two defense witnesses to testify as an alibi witness for defendant and her testimony was very short. Her entire direct statement consisted only of about one page in the reporter's transcript and thus probably had little impact on the jury. Furthermore, her testimony was not a crucial part of the defense. The focus of the jury was more likely centered on the ten victims of the robbery who testified as to

---

1. As noted by the Court in *Strickland,* if the ineffectiveness claim can be disposed of on the second prong, the prejudicial requirement, the first prong need not be addressed:

"Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result."
—— U.S. at ——, 104 S.Ct. at 2069–70, 80 L.Ed.2d at 699–700.

the events of the robbery. Their credibility in identifying the defendant was the crux of the state's case; there was no dispute that the robbery took place. We cannot say that any error had a persuasive effect on the jury that would alter the entire evidentiary picture in this case, but at most it had an isolated, trivial effect. Thus, we hold that counsel's failure to move for a 609 hearing with respect to Dale Cauthern's prior felony convictions did not have an actual adverse effect on the defense of this case.

Defendant next argues that defense counsel was ineffective in conducting a passive defense by presenting some but not all of the defense witnesses. Defendant contends that defense counsel should have called all witnesses or not have called any witnesses.

■ As stated above, disagreements as to trial strategy or errors in trial tactics will not support an effectiveness claim so long as the challenged conduct could have some reasoned basis. *State v. Watson, supra; State v. Tison, supra.* The decision as to what witness should be called to testify on the defendant's behalf is a tactical, strategic decision. *State v. Lee, supra; Vess v. Peyton,* 352 F.2d 325 (4th Cir.1965) *cert. denied,* 383 U.S. 953, 86 S.Ct. 1215, 16 L.Ed.2d 214 (1966).

"Tactical decisions require the skill, training, and experience of the advocate. A criminal defendant, generally inexperienced in the workings of the adversarial process, may be unaware of the redeeming or devastating effect a proffered witness can have on his or her case."

*State v. Lee,* 142 Ariz. at 215, 689 P.2d at 158. Thus, the attorney should decide how many, if any, witnesses to call. *State v. Rodriguez, supra.*

■ Furthermore, we recognize counsel's duty not to call a witness that counsel knows will commit perjury other than the defendant himself. *See* Ariz.R.S.Ct. 29(a), DR 7–102(A)(4), 17A A.R.S. ("In his representation of a client, a lawyer shall not knowingly use perjured testimony or false evidence."). *See also* Model Code of Professional Responsibility E.C. 7–26 (1979); A.B.A. Standards for Criminal Justice, The Defense Function § 4–5.2(b) (1982). It is apparent from the record that defense counsel interviewed the witnesses proposed by defendant and determined therefrom not to call certain witnesses.[2]

At the post conviction relief hearing defense counsel stated:

"Q. But after talking to the witnesses was it your opinion that either they didn't know anything or that they were going to come forward and commit perjury; would that be a correct statement of what you found out?

"A. Yes, I never interviewed a single potential defense witness who fully seemed to have firsthand knowledge of any of the events that were relevant to the case."

■ Defense counsel acted properly in not allowing witnesses to testify that would not aid defendant's case. *Cf. State v. Marquez,* 127 Ariz. 98, 618 P.2d 592 (1980) (not ineffective assistance of counsel where attorney interviewed eyewitnesses whom he did not call because they told him conflicting stories that could not exculpate defendant), or that he knew would commit perjury. *Lee, supra.*[3]

---

**2.** After the post conviction relief hearing the trial court found that as to the failure of defense counsel to call witnesses requested by the defendant that defense counsel "had either interviewed the witnesses and determined that they knew nothing about the case or defense counsel had determined that the witnesses were going to commit perjury."

**3.** Two witnesses defendant wanted his counsel to call were Denise Duffy and Greg Williams. Through defendant's own testimony at the post

conviction relief hearing the frivolousness of calling these witnesses can be seen.

"Q. I don't care about Mr. Perkins, but Denise Duffy, what was she going to testify to to help you out?

[Defendant] "A. That she was at the river bottom along with a few other people, I can't remember their names, except by the nickname.

"Q. So she was going to testify that you were at the river bottom?

We find counsel did not provide ineffective assistance by failing to call all or none of the witnesses proposed by defendant.

■ Alternatively, defendant contends that defense counsel was ineffective because he called witnesses he believed were going to commit perjury.

We believe that this ineffectiveness claim can be disposed of on the ground of lack of sufficient prejudice. As stated before, a conviction will be reversed based on ineffective assistance of counsel only when the defendant can show a reasonable probability that but for trial counsel's unprofessional conduct the result of the trial would have been different. *Strickland v. Washington, supra.* While in other cases it might be appropriate to remand to the trial court to give appellant the opportunity to demonstrate the requisite prejudice, defendant had the opportunity here and has failed to do so. As *Lee* recognized:

"In most cases presently before this Court in which ineffectiveness of counsel is urged as a ground for reversal, the appellant has had an opportunity to show prejudice. Though the burden of proof in *Watson* was on the state to show that any error of counsel was harmless beyond a reasonable doubt, appellants had the same incentive to present evidence of prejudice as they have under the standard announced today. Appellants who have had one opportunity to show prejudice and failed to do so are not entitled to a second chance."

*State v. Lee*, 142 Ariz. at 219, 689 P.2d at 162, fn. 5.

Defendant was represented by new counsel on his motion for post conviction relief. *State v. Watson, supra*, was decided on October 18, 1982. Over a year later on November 29, 1983 the attorney representing defendant on post conviction relief filed a supplemental petition in which he raised the issues herein that "counsel was ineffective by calling witnesses he believed were committing perjury." The post conviction relief hearing took place on February 17 and 24, 1984. Counsel was thus aware of the issue and had the opportunity and incentive to show prejudice relating to the testimony of the two defense witnesses at that time but failed to do so.

Furthermore, we have read the entire record and find that the record makes clear that the trial court could not have made such a finding. *Cf. State v. Emery*, 141 Ariz. 549, 688 P.2d 175 (1984) (though determination of whether defendant convicted of first degree murder killed, attempted to kill, or intended to kill ought to be made by trial court in determining whether to impose death penalty, Supreme Court will not remand case for resentencing when record compels finding on such issue either affirmatively or negatively). The two alibi witnesses did not change defendant's case. The defense presented was that defendant was not one of the robbers—an identity issue. The two witnesses statements were consistent with this defense in that they testified that defendant was some place else at the time the robberies were perpetrated. Their statements were not inconsistent with each oth-

"A. No, that I was not, or she did not see me there.

"Q. She didn't really know whether you were at the river bottom or not. She said that she was there and didn't see you there that night, is that correct?

"A. Correct

"Q. How about Greg Williams; what was he going to testify to?

"A. I don't know what he was going to testify to, I didn't talk to him.

"Q. Was he with you or—

"A. He wasn't with me, he was also at the river bottom.

"Q. He was at the river bottom, also?

"A. Yes.

"Q. All you know that he might testify to is that he didn't see you at the river bottom?

"A. Yes.

"Q. You sat there during the entire trial?

"A. Yes.

"Q. You heard the witnesses at the river bottom state there were possibly 200 people at the river bottom during that evening, a lot of people, is that correct?

"A. Yes."

Neither of these two witnesses were with defendant during the alleged time of the robbery or knew his whereabouts at anytime that night. Their testimony would have added nothing to the defense of the case.

er. Additionally, defense counsel did not refer to their testimony during closing argument and thus did not draw undue attention to it, but instead thoroughly and skillfully attacked the state's witnesses' credibility concerning the identification of the alleged robbers.

Since we dispose of defendant's ineffectiveness claim based on lack of prejudice, we do not need to determine whether placing the two witnesses on the stand that he knew were going to fabricate an alibi fell below minimal competence.

■■■■ Defendant's final argument on ineffective assistance of counsel is that counsel improperly advised defendant to admit that he was on probation in CR–126968 for the crime of criminal trespass at the time he committed the offenses herein.[4] We find no ineffectiveness because of defendant's admissions. The burden of establishing ineffectiveness of trial counsel is on the claimant. *State v. Tison, supra; State v. Pacheco,* 121 Ariz. 88, 588 P.2d 830 (1978). Proof of ineffectiveness must be a demonstrable reality rather than a matter of speculation. *State v. McDaniel,* 136 Ariz. 188, 665 P.2d 70 (1983); *State v. Oppenheimer, supra.*

Defendant presents no viable arguments in which the enhancement statute could have been attacked and no evidence that the state would have failed to prove this allegation had defendant not admitted it. Absent a showing that some reasonable argument existed that was available to argue on defendant's behalf or attack the evidence, we will not find ineffective counsel. Furthermore we will not create a per se rule of ineffective counsel merely because defense counsel advised his client to admit a probation statuts release. *Cf. Tollett v. Henderson,* 411 U.S. 258, 266–268, 93 S.Ct. 1602, 1607–08, 36 L.Ed.2d 235, 243–44 (1973) (even when there is bona fide defense, counsel may still advise his client to plead guilty if that advice falls within the range of competence demanded of at-

torneys in criminal cases.) *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). The Court had before it the Probation Violation Report and the Superior Court record indicating that defendant was placed on probation for a period of three years from July 19, 1982. It is apparent that had counsel discussed this matter with defendant and determined an admission was proper. Defendant himself freely admitted the violations in open court. We find no ineffectiveness of counsel.

## POST CONVICTION RELIEF—DEFENDANT'S PRO SE SUPPLEMENTAL BRIEF

Next we will consider the arguments raised in defendant's pro se brief filed in conjunction with his request for post conviction relief. After reviewing these arguments, we found them to contain little merit and therefore will dispose of them in a summary fashion.

■■■■ Defendant in his pro se brief raises several contentions concerning his photographic lineup identification by several of the robbery victims. First, defendant argues that he had a right to a physical line-up and that denial of this right unduly prejudiced his case. We find no prejudice. Generally, it is permissible to use a photo line-up even where defendant is in custody because to require a physical line-up in every case where defendant is in custody on any charge would unduly burden the police and substantially hamper their investigatory procedures. *State v. Taylor,* 27 Ariz.App. 330, 554 P.2d 926 (1976). Furthermore, it has been held that defendant has no constitutional right to a physical line-up. *State v. Ferguson,* 120 Ariz. 345, 586 P.2d 190 (1978).

■■■ Alternatively, defendant argues that he was at least entitled to a photo line-up with a photo that clearly resembled himself. Defendant does not point to any features in the photo which differ from his

---

**4.** In his opening brief, defendant claimed that his attorney improperly advised him "to admit prior convictions and a violation of A.R.S. § 13–604.01." The record, however, indicates that defendant admitted only his release status.

likeness, and after viewing the photo we do not see any aberrations or distortions in it. We find no error.

Defendant next argues that counsel was ineffective for failing to request a *Dessureault* hearing contesting the use of the photo which defendant alleges does not clearly resemble him. We fail to see any lack of effective counsel in failing to request a *Dessureault* hearing since the motion would have been meritless.

■■■■ Lastly, defendant argues that for his "in-court identification he should have had the option to sit in the audience among young police officers or people who are of the same general appearance." He contends that the in-court identifications were unduly suggestive because he was sitting with defense counsel at the defense table with a little sign stating "defense." We find no requirement for "in-court identifications" that the accused be surrounded by persons nearly identical in appearance. *State v. Mead*, 120 Ariz. 108, 584 P.2d 572 (App.1978). Furthermore, merely have a sign stating "defense" is not unduly suggestive. Defendant was not handcuffed or shackled or in prison garb but dressed in ordinary street clothes. There is no indication in the record that the witnesses' identification was based on anything other than his facial characteristics, physical stature, and hair color and texture.

■■■■ Defendant argues that he was not provided with a preliminary hearing and was therefore denied his constitutional right to a preliminary hearing. Defendant, however, was indicted by a grand jury. Either indictment by a grand jury or information after a preliminary hearing is a constitutionally proper method of bringing an accused felon to trial. *State v. Bojorquez*, 111 Ariz. 549, 535 P.2d 6 (1975); Ariz. Const. art. 2, § 30.

Defendant contends that the prosecutor, when questioning his witnesses, improperly brought out prior unconvicted offenses. Defendant does not point us to this testimony. In our search of the record for fundamental error we have looked for references by witnesses to prior unconvicted bad acts and have found none. We therefore find no merit in this contention.

■■■■ Defendant next argues that the court did not comply with A.R.S. §§ 13–703 and 13–708 in sentencing defendant to three consecutive life sentences without possibility of parole until defendant has served twenty-five years. Defendant initially contends that the trial judge did not properly consider the mitigating factors under A.R.S. § 13–703 in imposing the three life imprisonment terms. First, we note that A.R.S. § 13–703 only applies to first degree murder convictions. *State v. Zaragoza*, 135 Ariz. 63, 659 P.2d 22, *cert. denied*, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983).

■■■■ Second, the trial judge imposed the enhanced life sentences pursuant to the mandatory provision of A.R.S. § 13–604.01. Thus, the trial court did not have to consider aggravating and mitigating circumstances and set forth findings on aggravation or mitigation in imposing the life sentences. *Cf. State v. Davis*, 134 Ariz. 87, 654 P.2d 21 (App.1982).

■■■■ Alternatively, defendant argues that the consecutive life sentences were not properly imposed pursuant to A.R.S. § 13–708. A.R.S. § 13–708 which deals with concurrent terms of imprisonment states:

"If multiple sentences of imprisonment are imposed on a person at the same time, or when a person who is subject to any undischarged term of imprisonment imposed at a previous time is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall run concurrently unless the court expressly directs otherwise, in which case the court shall set forth on the record the reason for its sentence."

Defendant contends the trial judge did not properly set forth its reasons on the record for imposing consecutive sentences. We disagree. In imposing the sentences the court stated:

"The Court's reasons for imposing consecutive sentences, A.R.S. 13–604.01, and

the defendant is a danger to society and should be removed from society for a significant period of time and for the protection of society."

Furthermore, just prior to sentencing the trial judge signed and dated the presentence report, the supplemental report and the probation violation report indicating that he had reviewed and considered these reports. Thus, in making his statement on the record it is apparent that the trial judge was well aware of defendant's extensive prior criminal record. We find the trial judge's reason for imposing the consecutive sentences neither arbitrary nor capricious and not an abuse of discretion. *See State v. Gordon,* 125 Ariz. 425, 610 P.2d 59 (1980) (trial judge's familiarity with presentence report and proffering reasons why acts committed by defendant warrant consecutive sentences sufficient). *State v. McGuire,* 131 Ariz. 93, 638 P.2d 1339 (1981); *State v. Williams,* 134 Ariz. 411, 656 P.2d 1272 (App.1982).

Defendant last argues that his probation was unlawfully revoked. Defendant's argument seems to be that he was subjected to double jeopardy since his probation was revoked some time prior to trial and later defendant was found guilty again by the jury on the crime underlying the probation grant. Defendant's argument is misplaced. The jury did not retry defendant on the charges underlying his probation but merely was the trier of fact on the armed robbery and aggravated assault charges that were committed some time later. Thus, double jeopardy is not involved. Furthermore, a defendant is not placed in double jeopardy when he is given probation and that probation is later revoked. *State v. Pena,* 26 Ariz.App. 442, 549 P.2d 222 (1976); *State v. Witt,* 19 Ariz. App. 440, 508 P.2d 105 (1973). Additionally, the imposition of sentence after probation does not violate double jeopardy principles. *State v. Fuentes,* 26 Ariz.App. 444, 549 P.2d 224, approved and adopted, 113 Ariz. 285, 551 P.2d 554 (1976); *State v. Tritle,* 15 Ariz.App. 325, 488 P.2d 681 (1971).

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none. The judgment of convictions and the sentences imposed are affirmed.

HOLOHAN, C.J., and HAYS, Justice, and CAMERON, JJ., concur.

FELDMAN, Justice, specially concurring,

I join in the opinion, but concur separately for the reasons set forth in *State v. McNair,* 141 Ariz. 475, 687 P.2d 1230 (1984).